**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TUMBLEWEED, INC.** | ) | **CHAPTER 11** |
| | ) | |
| Debtor | ) | **CASE NO.  09-31525** |
| | ) | |
| IN RE: | ) | **Joint ~~Administration Pending~~ly Administered** |
| | ) | |
| **CUSTOM FOOD SOLUTIONS, LLC** | ) | **CHAPTER 11** |
| | ) | |
| Debtor | ) | **CASE NO. 09-31526** |

**DEBTORS' PLAN OF REORGANIZATION**
**SUBMITTED OCTOBER 27, 2009**
**AS MODIFIED DECEMBER 21, 2009**

* * * * *
**INTRODUCTION**

Tumbleweed, Inc. ("Tumbleweed"), a Delaware corporation with its principal place of business in Louisville, Kentucky, and Custom Food Solutions, LLC ("CFS"), a Delaware limited liability company with its principal place of business in Louisville, Kentucky, both referred to herein as "Debtors," propose the following plan of reorganization (the "Plan") for the resolution of the outstanding claims against, and equity interest in the Debtors.  The Debtors are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code (11 U.S.C. §1124).

Reference is made to the Debtors' ~~propos~~approved Disclosure Statement distributed contemporaneously with the Plan (the "Disclosure Statement"), for a discussion of the Debtors' history, business, results of operations, financial, projections and properties, and for a summary and analysis of the Plan.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION**
**AND COMPUTATION OF TIME**

**A.      Defined Terms**

As used in the Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1. ~~**"Acquiring Company" means Tumbleweed, LLC, a Kentucky limited liability company.**~~ [Intentionally omitted.]

2. **"Administrative Claim"** means a Claim for costs and expenses of administration allowed under Section 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Order for Relief Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises), including Claims under interim Financing Orders (including any adequate protection rights granted in connection with the approval thereof by the Bankruptcy Court); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Section 328, 330(a) or 331 of the Bankruptcy Code, including Fee Claims; (c) Claims for reclamation allowed in accordance with Section 546(c)(2) of the Bankruptcy Code; (d) any Claims allowed pursuant to Section 503(b)(9) of the Bankruptcy Code for the value of goods received by the Debtors in the 20 days immediately prior to the Petition Date and sold to the Debtors in the ordinary course of business; and (e) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

3. **"Administrative Trade Claims"** means an Administrative Claim arising from or with respect to the sale of goods or rendition of services on or after the Petition Date in the ordinary course of the applicable Debtors' business, including Administrative Claims of employees for ordinary course wages, expense reimbursement and health and welfare benefits.

4. **"Allowed Claim"** when used:

    **a.** With respect to any Claim other than an Administrative Claim, means a claim that is not a Disallowed Claim and:

        **i.** (A) is listed on a Debtor's schedules and is not designated in the Schedules as either disputed, contingent or unliquidated and (B) is not otherwise a Disputed Claim;

        **ii.** as to which no objection to allowance has been interposed;

        **iii.** that is allowed (A) in any Stipulation of Amount and Nature of Claim executed by the applicable Claim holder on or after the Effective Date, (B) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Bankruptcy Court, (C) pursuant to a Final Order or (D) pursuant to the terms of the Plan;

        **iv.** is asserted in a liquidated proof of claim that is accepted, and is designated for allowance, by the Debtors, as set forth in one or more notices Filed with the Bankruptcy Court on or before the Effective Date; or

        **v.** is any Claim that is not a Disputed Claim.

    **b.** With respect to an Administrative Claim, means an Administrative Claim that is not a Disallowed Claim and:

        **i.**      (A) as to which no objection to allowance has been interposed on or before the applicable period of limitation fixed by the Plan, the Confirmation Order, the Bankruptcy Rules or a Final Order for objecting to such Claims and (B) is not otherwise a Disputed Claim;

        **ii.**      that is allowed (A) in any Stipulation of Amount and Nature of Claim executed by the applicable Claim holder on or after the Effective Date, (B) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Bankruptcy Court, (C) pursuant to a Final Order or (D) pursuant to the terms of the Plan; or

        **iii.**      is asserted in a liquidated proof of claim that is accepted, and is designated for allowance, by the Debtors, as set forth in one or more notices Filed with the Bankruptcy Court on or before the Effective Date.

**5.**      **"Allowed . . . Claim"** means an Allowed Claim in the particular Class or category specified.

**6.**      **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect at the relevant time.

**7.**      **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of Kentucky.

**8.**      **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as in effect at the relevant time.

**9.**      **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**10.**      **"Causes of Action"** means, with respect to each Debtor individually, all claims, demands, rights, actions, causes of action and suits of such Debtor's Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any theory of law.

**11.**      **"Chapter 11 Cases"** means the cases commenced under Chapter 11 of the Bankruptcy Code by or with respect to the Debtors.

**12.**      **"Claim"** means a "claim," as defined in Section 101(5) of the Bankruptcy Code, against a Debtor.

**13.**      **"Class"** means a class of Claims or Interests, as described in Article II.

**14.**      **"Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

**15.**      **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**16.**      **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court on confirmation of the Plan, as such hearing may be continued from time to time.

**17.** **"Confirmation Notice"** means a notice of Confirmation to be served on parties in interest, the form and manner of service of which will be approved by the Bankruptcy Court in the Confirmation Order.

**18.** **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**19.** **"Cure Amount Claim"** means a Claim based upon a Debtor's defaults pursuant to an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Debtor under Section 365 of the Bankruptcy Code.

**20.** **"Debtors"** means, collectively, Tumbleweed, Inc. and Custom Food Solutions, LLC.

**21.** **"Derivative Claim"** means a claim or cause of action that is property of any of the Debtors' Estates pursuant to Section 541 of the Bankruptcy Code and any state or federal fraudulent conveyance, fraudulent transfer, preference, avoidance and other similar claims and causes of action for the benefit of creditors that the Debtors are authorized to pursue in accordance with the Bankruptcy Code and other applicable law.

**22.** **"Disallowed Claim"** means a Claim that has been disallowed by a Final Order.

**23.** **"Disbursing Agent"** means the Debtors, ~~the Acquiring Company~~ or any Person designated by the Debtors ~~or the Acquiring Company~~, in their sole discretion, to serve as a disbursing agent under Article VI of the Plan.

**24.** **"Disclosure Statement"** means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to the Plan and has been prepared and distributed by the Debtors, as plan proponents, as the same may be amended, modified or supplemented.

**25.** **"Disputed Claim"** means:

    **a.** a Claim that is listed on a Debtor's schedules as either disputed, contingent or unliquidated;

    **b.** a Claim that is listed on a Debtor's Schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted by the Holder varies from the nature or amount of such Claim as is listed on the Schedules;

    **c.** a Claim that is not listed on a Debtor's Schedules;

    **d.** a Claim as to which the applicable Debtor, prior to the Confirmation Date, or any other party in interest, has Filed an objection and such objection has not been withdrawn or denied by a Final Order; or

    **e.** a Tort Claim.

**26.** **"Distributable Cash"** means the cash to be held by the Debtors ~~or the Acquiring Company~~ on or after the Effective Date, in an amount determined by the Bankruptcy Court at the Confirmation Hearing to be sufficient to pay all Allowed Administrative Claims, Allowed Priority Claims, Allowed Priority Tax Claims contemplated provided distribution to herein and distribution to holders of Allowed Unsecured Claims in Class 5, and holders of Allowed Rejection Claims in Class 6, and associated administrative and other expenses.

27.     **"Effective Date"** means the first Business Day following eleven (11) days after entry of the Confirmation Order.

28.     **"Estate"** means, as to each Debtor, the estate created for such Debtor in its Chapter 11 case pursuant to Section 541 of the Bankruptcy Code.

29.     **"Executory Contract"** and **"Unexpired Lease"** means a contract or lease to which a Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

30.     **"Fee Claim"** means a Claim under Section 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Chapter 11 Cases.

31.     **"Fifth Third"** means Fifth Third Bank and The Fifth Third Leasing Company.

32.     **"File," "Filed" or "Filing"** means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

33.     **"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceeding for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

34.     **"GEFF"** means GE Capital Franchise Finance Corporation.

35.     **"Intercompany Claim"** means any Claim between the Debtors.

36.     **"Order for Relief Date"** means March 27, 2009 for each Debtor.

37.     **"Petition Date"** means March 27, 2009 for each Debtor.

38.     **"Plan"** means this joint plan of reorganization for the Debtors, and all Exhibits attached hereto or referenced herein, as the same may be amended, modified or supplemented.

39.     **"Priority Claim"** means a Claim that is entitled to priority in payment pursuant to Section 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

40.     **"Priority Tax Claim"** means a Claim that is entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

41.     **"Professional"** means any professional employed in the Chapter 11 Cases pursuant to Section 327 of the Bankruptcy Code or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Section 503(b)(4) of the Bankruptcy Code.

**42.**     **"Pro Rata"** means, when used with reference to a distribution of cash to holders of Allowed Claims in a particular Class or other specified group of Claims pursuant to Article III, proportionately so that with respect to a particular Allowed Claim in such Class, (a) the ratio of (i) the amount of cash distributed on account of such Claim to (ii) the amount of such Claim, is the same as (b) the ratio of (i) the amount of cash distributed on account of all Allowed Claims in such Class or group of Claims to (ii) the amount of all Allowed Claims in such Class or group of Claims.

**43.**     **"Rejection Claim"** means a Claim arising from the rejection, under Section 365 of the Bankruptcy Code or under the Plan, of an Executory Contract or Unexpired Lease of the Debtors and allowed pursuant to Section 502(g) of the Bankruptcy Code.

**44.**     **"Reinstated" or "Reinstatement"** means rendering a Claim or Interest unimpaired within the meaning of Section 1124 of the Bankruptcy Code. Unless the Plan specifies a particular method of Reinstatement, when the Plan provides that an Allowed Claim or Allowed Interest will be Reinstated, such Claim or Interest will be Reinstated, at the applicable Debtor's sole discretion, in accordance with one of the following:

> **a.**     The legal, equitable and contractual rights to which such Claim or Interest entitles the holder will be unaltered; or

> **b.**     Notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default:

>> **i.**     any such default that occurred before or after the commencement of the applicable Chapter 11 Case, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code, will be cured;

>> **ii.**     the maturity of such Claim or Interest as such maturity existed before such default will be reinstated;

>> **iii.**     the holder of such Claim or Interest will be compensated for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

>> **iv.**     the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest will not otherwise be altered; or

> **c.**     With regard to any Claims, Interests or obligations which are the subject of any of the Security Documents, as such Claims, Interests or obligations are amended by any of the Security Documents.

**45.**     **"Representative"** means, with respect to any entity, any existing or former member, equity holder, successor, predecessor, officer, director, partner, employee, agent, attorney, advisor, investment banker, financial advisor, accountant or other Professional of such entity, in each case in such capacity.

**46.** **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by a Debtor, as required by Section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

**47.** **"Secured Claim"** means a Claim that is secured by a lien on property in which an Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

**48.** **"Tort Claim"** means any Claim that has not been settled, compromised or otherwise resolved that arises out of allegations of personal injury, wrongful death, property damage, products liability or similar legal theories of recovery.

**49.** **"Trade Claim"** means any Unsecured Claim arising from or with respect to the sale of goods or rendition of services prior to the Petition Date in the ordinary course of the applicable Debtor's business, including any Claims of an employee that is not a Priority Claim.

**50.** **"Unsecured Claim"** means any Claim that is not an Administrative Claim, Cure Amount Claim, Priority Claim, Priority Tax Claim, Secured Claim or Rejection Claim.

**B.** **Rules of Interpretation and Computation of Time**

**1.** **Rules of Interpretation**

For purposes of the Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan, the Confirmation Order or otherwise; (d) any reference to an entity as a holder of a Claim or Interest includes that entity's successors, assigns and affiliates; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) subject to the provisions of any contract, articles of incorporation, bylaws, similar constituent documents, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; (i) the word "entity" means a person (as defined in Section 101(41) of the Bankruptcy Code), and estate, a trust, a governmental unit or the United States trustee; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply to the extent not inconsistent with any other provision of this Section I.B.1.

2.     **Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II.
## CLASSES OF CLAIMS AND INTERESTS

All Claims and Interests are placed in the following Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

A.     **Class 1:Administrative Claims**

Members of this class are:

| Claimant | CFS | Tumbleweed |
|---|---|---|
| Seiller Waterman LLC | Unliquidated | Unliquidated |
| Borowitz & Goldsmith PLC | | Unliquidated |
| Law Offices of Gary Jones | | Unliquidated |
| Mountjoy & Bressler LLP | | Unliquidated |
| United States Trustee | Unliquidated | Unliquidated |

| Claimant | CFS | Tumbleweed |
|---|---|---|
| Gordon Food Services, Inc. | | $706,844.23 |
| Cryovac, Inc. | | 34,990.71 |
| Border Foods, Inc. | | 24,523.00 |
| Skidmore Sales | | 23,481.31 |
| Kraft Food Ingredients | | 13,140.00 |
| Country Gardens Fresh Cut, Inc. | | 8,426.50 |
| U.S. FOODSERVICE, INC. | $2,423.10 | |
| XPEDX | $5,402.43 | |

Class 1 Claims are unimpaired.

B.     **Class 2**:     **Secured Claims of GEFF**

The Claims of GEFF consist of a secured loan in the original sum of $5,518,902.39 dated June 19, 2006 between GEFF and Tumbleweed (the "$5.5 Million Loan"), and a $13,373,000.00 secured 20-year term loan of same date (the "$13.3 Million Loan," collectively with the $5.5 Million Loan, the "GEFF Loans"). The GEFF Loans were collateralized by first priority security interests and mortgages granted by Tumbleweed in substantially all of Tumbleweed's personalty and real property, including substantially all of Tumbleweed's cash in Tumbleweed's bank accounts not maintained at Fifth Third banking centers as of the Petition Date (for a detailed description of collateral securing the GEFF Loans, see Exhibit "A" within

the attached Exhibit P-1. The outstanding balance owed to GEFF as of the Petition Date was $17,378,361.47, including accrued but unpaid interest.

Class 2 Claims are impaired.

**C.** **Class 3**: **Secured Claims of Fifth Third Bank and Fifth Third Leasing Company**

The Claims of Fifth Third Bank and Fifth Third Leasing Company consist of a loan in the original sum of $2,300,000.00 dated June 3, 2004 between Fifth Third Bank and CFS, secured by real property and personalty, and guaranteed by Tumbleweed, Inc., as amended; and, an original loan in the sum of $1,500,000.00 dated April 10, 2007 between Fifth Third Bank and Tumbleweed, Inc., as amended, and secured by personal property; and a restaurant equipment lease dated December 27, 2004 between Fifth Third Leasing Company and Tumbleweed, as amended. The outstanding balance owed to Fifth Third as of the Petition Date was $2,856,909.29, including accrued but unpaid interest.

Class 3 Claims are impaired.

**D.** **Class 4**: **Secured Claim of Winmark Capital Corporation**

Winmark is lessor of personal property to Tumbleweed, Inc. by virtue of equipment lease agreements. The remaining balance due thereon is approximately $22,000.00, with monthly payments of approximately $10,000.00.

Class 4 Claims are unimpaired

**E.** **Class 5**: **General Allowed Unsecured Claims**

Members of Class 5 are:

| Vendor | CFS | Tumbleweed |
|---|---|---|
| CURRENT MARKETING | | $101,514.22 |
| RUPARI FOOD SERVICE INC. | $44,627.01 | |
| MIDDLETON REUTLINGER | | $23,415.00 |
| THE WASSERSTROM COMPANY | | $22,514.94 |
| SAGE V FOODS | $21,946.75 | |
| FROST, BROWN, TODD  LLC | | $17,409.75 |
| ~~THE MORNING STAR PACKING COMPANY~~ ~~$16,447.41~~ LG&E | | $13,947.81 |
| BUTTER BUDS FOOD INGREDIENTS | $13,713.64 | |
| LIBERTY SERVICES, INC. | $13,579.72 | |
| N. WASSERSTROM & SONS | | $12,107.35 |
| RESTAURANT TECHNOLOGIES, INC. | | $9,542.35 |
| IRISH HILL FOODS INC | $8,976.66 | |
| ARAMARK UNIFORM SERVICES INC. | | $8,586.71 |
| OLONZO LTD | | $7,420.00 |
| SOUNDS UNLIMITED PRODUCTIONS | | $7,200.00 |
| F.D. PIERCE CO. | | $6,977.77 |
| McCORMICK EQUIPMENT CO., INC. | | $5,540.20 |
| ~~XPEDX~~ ~~$5,402.43~~ APPAREL BY DESIGN | | $4,684.31 |

| Vendor | CFS | Tumbleweed |
|---|---|---|
| CONSUMER PRODUCTS CORPORATION | $4,611.20 | |
| SIMPLEXGRINNELL LP | | $4,431.20 |
| DUPLICATOR SALES AND SER | | $4,339.58 |
| AT-CHEM, INC. | $4,037.96 | |
| ADM CO./LSI INGREDIENTS | $3,799.20 | |
| GLENNS COMMERCIAL SERVICE | | $3,769.62 |
| PTX FOOD CORP. | $3,284.00 | |
| NATIONAL CITY BANK | | $3,216.93 |
| McMASTER-CARR | $3,186.62 | |
| R.A. MARTIN, INC. | $3,184.96 | |
| ARAMARK UNIFORM SERVICES, INC. | | $2,968.15 |
| A-TECH SERVICES | | $2,888.72 |
| WESTERN PLAINS PRODUCTS, LLC | $2,880.00 | |
| BEST WESTERN DAYTON NORTHWEST | | $2,748.16 |
| TALBOTT TILE | | $2,700.00 |
| MIDWEST SYSTEMS, INC. | | $2,681.94 |
| DAUENHAUER PLUMBING CO. INC. | | $2,438.00 |
| PC MALL | | $2,435.48 |
| SMART BUSINESS SOLUTIONS | | $2,428.28 |
| ~~U.S. FOODSERVICE, INC.$2,423.10~~ZONES | | $2,346.79 |
| PRAIRIE FARMS DAIRY | $2,332.17 | |
| GCS SERVICE, INC. | | $2,205.41 |
| ITALIAN ROSE GARLIC PRODUCTS, INC. | $2,120.00 | |
| CROWN PACKAGING CORP. | | $2,075.89 |
| COMMUNICATIONS LOGS | | $1,940.86 |
| FRANKLIN MACHINE PRODUCTS | | $1,869.26 |
| ARAMARK UNIFORM SERVICE INC. | | $1,858.61 |
| GINN PLUMBING CONT'S | | $1,788.00 |
| DERBY CITY LITHOGRAPHIG | | $1,782.92 |
| ESPON AMERICA, INC. | | $1,590.00 |
| TC REPAIRS, INC. | | $1,561.21 |
| D & S EXPEDITING | $1,550.00 | |
| OKOLONA PEST CONTROL INC | | $1,542.00 |
| TIFFANY & CO. | | $1,539.94 |
| BALLARD HIGH SCHOOL | | $1,525.00 |
| BOROWITZ & GOLDSMITH, PLC | | $1,518.75 |
| TD LAWNCARE PLUS | | $1,430.45 |
| GARDA CL CENTRAL, INC. | | $1,417.54 |
| WINGATE INN | | $1,386.98 |
| WASSESTROM COMPANY | | $1,363.21 |
| LONG RANGE SYSTEMS, INC. | | $1,299.92 |
| LABOR FINDERS OF KENTUCKY, INC. | $1,257.76 | |
| JG MAINTENANCE, INC. | | $1,231.50 |
| DELL MARKETING L.P. | | $1,206.31 |
| KAMPS, INC. | $1,197.00 | |
| SUPER 8 MOTEL - HEATH | | $1,153.72 |
| SIMCO REFRIGERATION, INC. | | $1,135.33 |
| CLARK & RIGGS | | $1,117.85 |
| INTERNATIONAL COVERS, INC. | | $1,090.00 |
| RAMADA INN - ZORN | | $1,076.94 |
| ARAMARK UNIFORM SERVICES | | $992.54 |

| Vendor | CFS | Tumbleweed |
|--------|-----|------------|
| THE SIGN CENTER INC. | | $977.88 |
| MAHER ELECTRIC, LLC | | $938.55 |
| J & J TOOL COMPANY, INC. | $916.90 | |
| ARIZONA VENTURES, LLC | | $892.07 |
| UNITED PARCEL SERVICE | | $851.43 |
| STATE INDUSTRIAL PRODUCTS | | $750.03 |
| HYLAND FILTER SERVICE, INC. | | $709.71 |
| UNITED REFRIGERATION INC. | | $707.44 |
| AMERICAN COLD STORAGE | | $696.00 |
| REITZ ELECTRIC SERVICE., INC. | | $683.75 |
| NEWLY WEDS FOODS, INC. | $674.94 | |
| VALUE PLACE LOUISVILLE | | $638.12 |
| DINE COMPANY | | $616.38 |
| E.L. WALTERS A/C & HEATING, INC. | | $611.20 |
| OFFICE PRIDE | | $605.00 |
| ANYTIME WASTE SYSTEMS | $579.04 | |
| CARDINAL CARRYOR INC. | $573.12 | |
| RESCUE ROOTER | | $560.00 |
| ACCURATE MECHANICAL INC. | | $539.25 |
| WILLIAMS MECHANICAL SERVICE | | $532.96 |
| CUSTOM RESTAURANT SERVICE, INC. | | $532.41 |
| MIDOHIO GASKETGUY | | $526.00 |
| ROEHM REFRIGERATION, INC. | | $520.02 |
| CROWN ELECTRIC, INC. | | $514.60 |
| 3M CEL7248 | $495.39 | |
| PETERSON WINDOW CLEANING | | $493.00 |
| HEADDEN SEPTIC AND | $477.50 | |
| ARROW TERMITE & PEST CONTROL | | $470.01 |
| ECOLAB PEST ELIM. DIV. | | $465.32 |
| TAURUS CARPET CLEANING | | $460.00 |
| MOREDIRECT | | $457.66 |
| ALPINE ICE COMPANY | | $446.47 |
| PARETOLOGIC, INC. | | $439.20 |
| KENTUCKIANA LAW ENFORCEMENT | | $422.00 |
| STS REPAIR CO. | | $401.79 |
| LOUISVILLE MALE HIGH FIELD HOC | | $400.00 |
| M.E.G. ENTERPRISES | | $390.70 |
| QUALITY KITCHEN SERVICE | | $376.33 |
| SPRINGFIELD OH FAIRFIELD | | $374.03 |
| ARAMARK-CAROL STREAM, IL | | $361.45 |
| PAYNE ELECTRIC | | $352.90 |
| RUEFF SIGNS  INC. | | $349.74 |
| KOUSTIC KLEAN, INC. | | $337.05 |
| FRAN'S MOWING LLC | | $326.35 |
| HADDAD ORIENTAL RUGS | | $320.25 |
| TECHNICAL COMBINED SERVICES CO | | $305.00 |
| HITE AIR CONDITIONING & REFRIG | | $300.00 |
| M&M CLEANING MANAGEMENT INC. | | $295.00 |
| ENTERPRISE RENT-A-CAR | | $281.96 |
| JTS WINDOW CLEANING | | $276.90 |
| PLANT WORLD GREENHOUSE | | $275.96 |

| Vendor | CFS | Tumbleweed |
|---|---|---|
| D. MORRIS VINYL SERVICE | | $265.00 |
| RAMBO WESTENDORF PLUMBING INC. | | $260.48 |
| PAYNE ELECTRIC CO., INC. | | $255.93 |
| D.L. BROWN PLUMBING, INC. | | $254.40 |
| PRECISION CLEANING SERVICES | | $250.00 |
| A & R GRINDING | $246.00 | |
| ORACLE ELEVATOR COMPANY | | $238.10 |
| WIDMER'S | | $223.56 |
| COMMONWEALTH MECHANICAL INC. | | $223.31 |
| ORKIN EXTERMINATING | | $219.24 |
| TOPPINS TECHNICAL SERVICES | | $219.00 |
| C & J ELECTRIC CO. | | $214.64 |
| OHIO WINDOW CLEANING INC. | | $208.65 |
| GASKET PRO, LLC | | $208.29 |
| CINTAS CORPORATION # 530 | | $204.00 |
| ACTION PEST CONTROL, INC. | | $200.00 |
| AMERICLEAN MOBILE PRESSURE WAS | | $200.00 |
| WEBB'S COIL CLEANING | | $200.00 |
| CULLIGAN WATER SYSTEMS | | $187.17 |
| DATA CASH REGISTER | | $185.50 |
| PREMIER SCALES & SYSTEMS | $185.00 | |
| ORKIN PEST CONTROL | | $183.87 |
| BLUEGRASS KESCO, INC. | $180.00 | |
| PCM TECHNOLOGIES LLC | | $180.00 |
| HAGERMAN PLUMBING & HEATING CO | | $179.88 |
| HAMPTON INN HEATH-NEWARK | | $176.28 |
| ZEE MEDICAL INC | | $174.16 |
| WAYNE'S LAWN & LANDSCAPE | | $170.00 |
| MIDWEST CUTLERY SERVICE | | $166.00 |
| VETERAN PROMOTIONS, INC. | | $164.00 |
| AIR HYDRO POWER | | $163.07 |
| YOUNG ELECTRONICS UNLIMITED | | $162.50 |
| KENTUCKY WINDOW CLEANING INC | | $160.00 |
| MIKE HENSLEY PLUMBING INC. | | $160.00 |
| NELSON-JAMESON, INC. | $159.80 | |
| YBJ, INC. | | $157.00 |
| HITE AIR CONDITIONING & REFRIGERATION | | $150.00 |
| KEN'S BEVERAGE, INC. | | $150.00 |
| Y CITY LOCKSMITH | | $150.00 |
| COATING SOLUTIONS, INC | | $141.52 |
| FLEXIBLE PACKAGING | $140.00 | |
| TRICOR EMPLOYMENT SCREENING, L | | $138.25 |
| US HOSPITALITY CORP. | | $137.50 |
| HYLAND FILTER SERVICE | | $136.90 |
| LAB SAFETY SUPPLY, INC. | $131.19 | |
| CULLIGAN WATER   TERRE H | | $130.00 |
| MAESTRANZI'S SHARP KNIFE SERVI | | $130.00 |
| BUSINESS DIRECTORY SERVICES | | $129.50 |
| NANZ & KRAFT FLORIST | | $128.06 |
| WAYNE'S LAWN CARE | | $127.50 |
| GUTRIDGE ELETRIC, INC. | | $126.52 |

| Vendor | CFS | Tumbleweed |
|---|---|---|
| ACXIOM | | $126.00 |
| PERFECTION PEST CONTROL INC | | $125.00 |
| AUTOMATIONDIRECT.COM, INC | $124.50 | |
| SIGNS NOW | | $120.84 |
| SMART SOLUTIONS, INC. | | $116.70 |
| GREEN GUARD FIRST AID & SAFETY | | $114.77 |
| PLASTIC NAMEPLATES, INC. | $113.24 | |
| TIME WARNER BUSINESS CLASS | | $111.47 |
| ALL SIGNS OF CHILLICOTHE, INC. | | $107.00 |
| CLEARVIEW BUILDING SERVICES, I | | $106.75 |
| CLEAN CRETE | | $106.74 |
| W.R. HACKETT INC. | | $106.45 |
| ACE ROOFING | | $105.93 |
| ACCU-KEY LOCK & SAFE, INC. | | $102.49 |
| JD NELSON & ASSOCIATES, LLC | | $102.32 |
| ACME PLUMBING HEATING & | | $102.00 |
| DAYDOTS INC. | | $101.13 |
| CYSTIC FIBROSIS FOUNDATION | | $100.00 |
| JACK ROBINSON | | $100.00 |
| ORKIN - DAYTON, OH | | $99.33 |
| MATRIX SECURITY SYSTEMS, INC. | | $96.30 |
| ORKIN-DAYTON | | $96.30 |
| ORKIN COMMERICAL SERVICES | | $95.62 |
| SEWARD PLUMBING, HEATING & COO | | $93.90 |
| PLEHN'S | | $86.00 |
| PROFESSIONAL COIL/DAYTON | | $85.60 |
| METHODIST HOSPITAL OCCUPATIONAL | | $82.80 |
| GUTRIDGE PLUMBING INC. | | $80.26 |
| BOBNIK SIGNS | | $80.25 |
| AUTOMATED OFFICE SOLUTIONS, INC. | | $80.00 |
| DAVE'S WIRING SPECIALTIES | | $80.00 |
| KEYCARD PROMOTIONS, LLC | | $73.75 |
| FRITZ BROTHERS, INC. | | $72.50 |
| BEER SYSTEM CLEANING REPAIR | | $72.00 |
| AMERICAN DRAFT SERVICE CO. | | $70.00 |
| FSI-CENTRAL KENTUCKY | | $69.96 |
| EVER-GREEN TURF & LANDSCAPE | | $65.22 |
| HAHN LOESER & PARKS LLP | | $64.50 |
| MUSKINGUM WINDOW SERVICE | | $64.00 |
| NELMAR SECURITY PACKAGING SYST | | $62.00 |
| S & J LIGHTING AND LENSE SUPPLY | $60.60 | |
| CINTAS FIRST AID & SAFETY | | $54.36 |
| ALLIED ELECTRONICS, INC. | | $53.80 |
| TERMINIX INTERNATIONAL | | $52.43 |
| YGS INC. | | $51.90 |
| DEPARTMENT OF HOMELAND SECURITY | | $50.00 |
| SPECIAL OLYMPICS OHIO | | $50.00 |
| TERMINIX - ERLANGER | | $50.00 |
| WELBORN FLORIST | | $48.42 |
| GERALD PURCELL | | $48.00 |
| LOGAN COUNTY TREASURER | | $47.37 |

| Vendor | CFS | Tumbleweed |
|---|---|---|
| AMERICAN CANCER SOCIETY | | $45.68 |
| UNIVERSITY SPORTS PUBLICATIONS | | $45.00 |
| CLEARGUARD PRODUCTS, INC. | | $44.06 |
| SIGN EXPRESS | | $40.13 |
| THE DARWIN EARLY COMPANY | | $40.00 |
| THEODORE LIETZKE | | $34.17 |
| AT & T ADVERTISING & PUBLISHING | | $33.15 |
| MOSHOLDER'S LOCK SHOP | | $32.10 |
| THE HAPPY CHEF, INC. | | $31.85 |
| TOCOR INC. | | $28.46 |
| BEE LINE COURIER SERVICE | $27.22 | |
| PLUMBERS SUPPLY COMPANY | $26.81 | |
| B&B COIL | | $25.00 |
| DATE LABEL CORPORATION | | $24.39 |
| KIM A. NOONING | | $24.29 |
| CLEAR LINES LLC | | $22.00 |
| SCOTT GROSS CO. INC. | | $19.83 |
| ELECTRIC BLUE REPROGRAPHICS | | $15.90 |
| ZIP EXPRESS | | $10.26 |
| KEITH WHITE | | $9.27 |
| XPEDX | $306.00 | |
| **TOTAL:** | | ~~$521,970.30~~$496,184.65 |

Class 5 Claims are impaired.

**F.      Class 6**:      **Allowed Unsecured Rejection Claims**

Proven and allowed claims of those non-debtor parties to various pre-petition executory contracts and unexpired leases which the Debtors have heretofore rejected and/or shall reject prior to confirmation of the Plan, which have timely filed a claim for damages.

Members of Class 6 are:

| Claimant | CFS | Tumbleweed |
|---|---|---|
| AEI Income and Growth Fund XXI LP | | $213,680.06 |
| Skytop Improvements, LLC | | 153,746.98 |
| Stonegate Corner, LLC | | 120,300.00 |
| **TOTAL:** | | **$487,727.04** |

Class 6 Claims are impaired.

**G.**     **Class 7**:     **Contested Claims**

Class 7 consists of Unsecured Claims which are Disputed and remain Unliquidated. Members of this Class include:

| Claimant | CFS | Tumbleweed |
|---|---|---|
| ~~Barbara Jo Swaney~~~~Unliquidated~~Jacquelyn N. Schulz | | Unliquidated |
| Abilene Tx Foods | Unliquidated | |

Class 7 Claims are impaired.

**H.**     **Class 8**:     **Equity Security Holders**

Class 8 consists of equity security holders of Tumbleweed and CFS.

Class 8 Claims are impaired.

**I.**     **Class 9: Non-Voting Claims**

Class 9 consist of Claims which have neither been paid during the pendency of these Chapter 11 Cases, or will be paid by a non-debtor third party insurance company. Members of this Class include:

| Claimant | CFS | Tumbleweed |
|---|---|---|
| Southern Wine & Spirits | | $9,096.59 |
| Republic Beverage Company of Ky. | | 5,316.98 |
| Crown Packaging Corp. | | 2,075.89 |
| Chas. Seligman Dist. Co. | | 1,717.50 |
| River City Distributing | | 1,264.40 |
| Republic Beverage Company of Ky. | | 595.46 |
| Olinger Dist. Indpls Th. | | 565.16 |
| Monarch Beverage Co., Inc. | | 534.99 |
| Budweiser of Owensboro | | 527.35 |
| National Wine & Spirits | | 209.84 |
| Bryant Dist. Co. Lou. | | 273.03 |
| Anheuser-Busch Inc. | | 1,364.30 |
| Stagnaro Distributing, Inc. | | 826.80 |
| Clark Distributing | | 608.90 |
| Edward Utley, Jr., Inc. | | 511.95 |
| Dever Dist. Co., Inc. | | 392.10 |
| Working Distributors, Inc. | | 190.55 |
| Taurus Carpet Cleaning | | 200.00 |
| Payne Electric Co., Inc. | | 917.68 |
| C. Rueff Sign Company, Inc. | | 2,684.12 |
| Seward Plumbing, Heating & Cooling | | 180.00 |
| Rita Ann Nance | | Unliquidated |

| Claimant | CFS | Tumbleweed |
|---|---|---|
| Melisa Adcock | | Unliquidated |
| Blaine Doug Hardin | | Unliquidated |
| Barbara Jo Swaney | | Unliquidated |

Class 9 Claims are unimpaired.

# ARTICLE III.
## TREATMENT OF CLAIMS AND INTERESTS

**A.      Class 1:  Administrative Claims**

**1.      Payment of Administrative Claims**

**a.      Administrative Claims in General**

Subject to the bar date provisions herein, unless otherwise agreed by the holder of an Administrative Claim and the applicable Debtor ~~or the Acquiring Company~~, or a Final Order of the Bankruptcy Court provides otherwise, each holder of an Allowed Administrative Claim will receive from the Distributable Cash, in full satisfaction of its Administrative Claim, cash equal to the amount of such Allowed Administrative Claim either (i) on the Effective Date or (ii) if the Administrative Claim is not allowed as of the Effective Date, within 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order or a Stipulation of Amount and Nature of Claim is executed by the Debtor ~~or the Acquiring Company~~ and the holder of the Administrative Claim.

**b.      Statutory Fees**

On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, will be paid in cash equal to the amount of such Administrative Claims. All post-Confirmation fees payable pursuant to 28 U.S.C. § 1930 will be paid by the Debtor ~~or the Acquiring Company~~ in accordance therewith until the closing of the Chapter 11 Cases pursuant to Section 350(a) of the Bankruptcy Code.

**c.      Ordinary Course Liabilities**

Administrative Claims based on liabilities incurred by a Debtor in the ordinary course of its business prior to the Effective Date (including Administrative Trade Claims and Allowed Administrative Claims arising from those contracts and leases assumed by the Debtor) will be paid by the Debtor ~~or the Acquiring Company~~ pursuant to the terms and conditions of the particular transaction giving rise to those Administrative Claims.

**d.      Bar Dates for Administrative Claims**

**i.      General Bar Date Provisions**

Except as otherwise provided in Section III.A.1.c.ii, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtors ~~and the Acquiring Company~~ pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation

Order, no later than 30 days after the Effective Date. Holders of Administrative Claims that do not File and serve such a request by the applicable Bar Date will be forever barred from asserting such Administrative Claims against the Debtors, ~~and the Acquiring Company~~ or their respective property, and such Administrative Claims will be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Debtors, ~~the Acquiring Company~~ and the requesting party by the later of (A) 60 days after the Effective Date or (B) 30 days after the Filing of the applicable request for payment of Administrative Claims.

### ii. Bar Dates for Certain Administrative Claims

#### A. Professional Compensation

Professionals or other entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Debtors, ~~the Acquiring Company~~ and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 45 days after the Effective Date. Objections to any Fee Claim must be Filed and served on the Debtors, ~~the Purchaser~~ and the requesting party by the later of (1) 75 days after the Effective Date or (2) 30 days after the Filing of the applicable request for payment of the Fee Claim. To the extent necessary, the Confirmation Order will amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims.

#### B. Post-Petition Ordinary Course Liabilities

Holders of Administrative Claims based on liabilities incurred by a Debtor post-petition in the ordinary course of its business, including Administrative Trade Claims, Administrative Claims of governmental units for Taxes (including Tax audit Claims arising after the Petition Date) and Administrative Claims arising from those contracts and leases assumed by the Debtors, will not be required to File or serve any request for payment of such Administrative Claims. Such Administrative Claims will be satisfied pursuant to Section III.A.1.b.

### 2. Priority Tax Claims

Pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the holder of a Priority Tax Claim and the applicable Debtor ~~or the Acquiring Company~~, each governmental unit which is the holder of an Allowed Priority Tax Claim will receive, in full satisfaction of its Allowed Priority Tax Claim, deferred cash payments totaling the Allowed amount of such Claim over a period not exceeding five years from the Order for Relief Date. Payments will be made in equal quarterly installments of principal plus simple interest accruing from the Effective Date at the statutory rate on the unpaid portion of each Allowed Priority Tax Claim (or upon such other terms determined by the Bankruptcy Court to provide the holders of Priority Tax Claims with deferred cash payments having a value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claims). The Debtors ~~or the Acquiring Company~~ will have the right to pay any Allowed Priority Tax Claim, or any remaining balance of such Priority Tax Claim, in full at any time on or after the Effective Date, without premium or penalty.

### B. Class 2: Secured Claims of GEFF

The Secured Claims of GEFF will be satisfied on or before the Effective Date pursuant to the terms of the executed Letter of Intent dated October 20, 2009, attached hereto as Exhibit P-1, as

supplemented and modified by the Amendment to Letter of Intent of December 21, 2009, attached hereto as Exhibit P-5 (collectively, the "GEFF LOI").

**C.      Class 3:      Secured Claims of Fifth Third**

All existing Claims of Fifth Third will be satisfied on or before the Effective Date, pursuant to the terms contained in the Summary of Proposed Loans attached hereto as Amended Exhibit P-2 (the "Fifth Third Term Sheet").

**D.      Class 4:      Secured Claim of Winmark Capital Corporation**

The Secured Claim of Winmark Capital Corporation will be Reinstated by the Debtors' continued payment of obligations related thereto pursuant to the parties' normal business terms, and assumedsatisfied by the Acquiring CompanyTumbleweed on the Effective Date to the extent that any obligations thereunder remain outstanding.

**E.      Class 5: General Allowed Unsecured Claims**

On the Effective Date, or as soon as practical thereafter, the Debtors or the Acquiring Company will send payment in cash to each holder of a Class 5 Claim representing that holder's Pro Rata share of the Distributable Cash available to Class 5. The Distributable Cash available to members of Class 5 is anticipated to be approximately $52,000.00.

**F.      Class 6:      Allowed Unsecured Rejection Claims**

On the Effective Date, or as soon as practical thereafter, the Debtor or the Acquiring CompanyDebtors will send payment in cash to each holder of a Class 6 Claim representing that holder's Pro Rata share of the Distributable Cash available to Class 6. The Distributable Cash available to members of Class 6 is anticipated to be approximately $24,500.00.

**G.      Class 7:      Contested Claims**

Class 7 Claims are unliquidated and Disputed, and subject to resolution by mediation proceedings. In the event that any Class 7 Claim becomes an Allowed Claim, the holder of such Claim will receive the same treatment as a Class 5 Claim to the extent permitted by applicable law. percentage distribution of Cash on its Claim as all other Class 5 claimants. For purposes of voting on the Plan, holders of Class 7 Claims will be entitled to vote as members of Class 5; each holder being entitled to a single vote for purposes of the numerosity requirement of Section 1126(c) of the Bankruptcy Code, and Claim value of $1.00 for purposes of satisfying the amount requirement of Section 1126(c) of the Bankruptcy Code.

**H.      Class 8: Equity Security Holders**

Holders of Class 8 Interests in the Debtors shall receive no distributions under the Plan, and their Interests shall be canceled upon Confirmation.

## I.        Class 9: Non-Voting Claims

Holders of Class 9 Claims have had, or agreed to have, their Claims satisfied in full by means other than distributions under the Plan.  To the extent that an identified member of Class 9 has not yet exercised its ability to setoff its Claim against the Debtors with either of the Debtors' escrow deposits, such holder is authorized to do so on or prior to the Effective Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.        Section 363 Sale of Tumbleweed Realty

This Plan constitutes a motion for approval of the sale of the Sale-Leaseback Properties ~~and~~, Deed in Lieu Properties (including, without limitation, the Dublin Property), and 3780 West Broad Street, Columbus, Franklin County, Ohio 43228 (the "Tumbleweed Realty") to GEFF on the terms and subject to the conditions set forth in the GEFF LOI. On or before the Effective Date, GEFF and Tumbleweed shall consummate the sale of the Tumbleweed Realty, as contemplated by the GEFF LOI, pursuant to the terms of the Confirmation Order. The actions by Tumbleweed necessary to effect the sale of the Tumbleweed Realty may include the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the GEFF LOI and the Plan and having such other terms to which the applicable entities may agree, and all other actions that the applicable entities determine to be necessary or appropriate, including making such filings or recordings that may be required by or appropriate under applicable state law in connection with such transactions.

### B.        Comprehensive Settlement of Claims and Controversies

#### 1.        General

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan, including the releases set forth in Section IV.B.2, will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval ~~as of the Effective Date,~~ of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates and Claim and Interest holders, and is fair, equitable and reasonable.

#### 2.        Releases

##### a.        Release by Debtors and Estates

As of the Effective Date, in consideration of the compromises, settlements and transfers embodied in this Plan, the Debtors, on their own behalf and as representatives of their respective Estates, shall release unconditionally, and are hereby deemed to release unconditionally, each and all of (i) their respective directors, officers, employees, ~~attorneys, accountants,~~ underwriters, investment bankers, financial advisors,

members, managers and agents, who served in such capacities as of the Order for Relief Date or thereafter; (ii) GEFF (if it votes to accept the Plan), (iii) Fifth Third (if it votes to accept the plan), and with respect to the parties identified in clauses (ii) and (iii) above, their respective present or former directors, officers, employees, attorneys, accountants, underwriters, investment bankers, financial advisors, members, managers and agents, as of the Order for Relief Date, during the Chapter 11 Cases or as of the Effective Date acting in such capacity of and from all claims (including Derivative Claims), obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the right to enforce the Debtors' rights under the Plan and the contracts, instruments, releases, agreements and documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to a Debtor, the Chapter 11 Cases, the Plan or the Disclosure Statement, or their respective property.

### b. Release by Holders of Claims or Interests

As of the Effective Date, in consideration for the obligations of the Debtors, the Acquiring Company under the Plan and the cash and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each holder of a Claim or Interest that votes in favor of the Plan will be deemed to forever release, waive and discharge all claims (including Derivative Claims), obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the right to enforce the Debtors' and the Acquiring Company's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to a Debtor, the Chapter 11 Cases, the Plan or the Disclosure Statement (collectively, the "Released Claims") that such entity has, had or may have against any of (i) the Debtors; (ii) GEFF (if it votes in favor of the Plan); (iii) Fifth Third (if it votes in favor of the Plan); and their respective present or former directors, officers, employees, attorneys, accountants, underwriters, investment bankers, financial advisors, members, managers and agents, as of the Order for Relief Date, during the Chapter 11 Cases or as of the Effective Date acting in such capacity (which release will be in addition to the discharge of Claims and termination of Interests provided herein and under the Confirmation Order and the Bankruptcy Code).

### c. Injunction Related to Releases

*As further provided in Section IXXI.C, the Confirmation Order will permanently enjoin the commencement or prosecution by any entity or person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan, including pursuant to the releases in this Section IV.B.2.*

## C. Cancellation and Surrender of Instruments, Securities and Other Documentation

Except as provided in any contract, instrument or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article III, the prepetition credit documents in favor of Tumbleweed and CFS will be canceled and of no further force and effect, without any further action on the part of the Debtors. On the Effective Date, Tumbleweed and CFS's Interests shall be deemed terminated and canceled and of no further force and effect, without any further action on the part of the Debtors or any other entity. The holders of or parties to such canceled instruments, securities and other documentation will have no rights arising from or

relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided pursuant to the Plan.

**D.**     **Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes**

The President and Chief Executive Officer, or any Vice President of each Debtor will be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan. The Secretary or any Assistant Secretary of each Debtor will be authorized to certify or attest to any of the foregoing actions. Pursuant to Section 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp Tax, real estate transfer Tax or similar Tax: (1) the transfer of any Assets to GEFF; (2) the ~~transfer of any assets to the Acquiring Company; (3) the~~ creation of any mortgage, deed of trust, lien or other security interest; (4~~3~~) the making or assignment of any lease or sublease; (~~5) the assignment of a portion of the GEFF and Fifth Third Claims to the Acquiring Company; (6) the making or assignment of any leases or subleases; (7~~4) any Restructuring Transaction; or (8~~5~~) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements; agreements of consolidation, restructuring, disposition, liquidation or dissolution; deeds; bills of sale; or assignments executed in connection with any of the foregoing or pursuant to the Plan.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**     **Executory Contracts and Unexpired Leases to Be Assumed or Assumed and Assigned**

**1.**     **Assumption and Assignment Generally**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, on the Effective Date, pursuant to Section 365 of the Bankruptcy Code, the applicable Debtor will assume or assume and assign, as indicated, each of the Executory Contracts and Unexpired Leases listed on Exhibit P-3, unless such Executory Contract or Unexpired Lease was previously assumed or rejected by the Debtors or previously expired or terminated pursuant to its own terms; *provided, however,* that the Debtors reserve the right, at any time prior to the Effective Date, to amend Exhibit P-3 to: (a) delete any Executory Contract or Unexpired Lease listed therein, thus providing for its rejection pursuant to Section V.C; or (b) add any Executory Contract or Unexpired Lease thereto, thus providing for its assumption or assumption and assignment pursuant to this Section V.A.1. The Debtors will provide notice of any amendments to Exhibit P-3 to the parties to the Executory Contracts or Unexpired Leases affected thereby and to the parties on the then-applicable service list in the Chapter 11 Cases. Each contract and lease listed on Exhibit P-3 will be assumed only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease, that it was not previously assumed or rejected by the Debtors, and that it has not previously expired or terminated pursuant to its own terms. Listing a contract or lease on Exhibit P-3 will not constitute an admission by a Debtor that such contract or lease (including any related agreements as described in Section V.A.1 or Section V.A.2) is an Executory Contract or Unexpired Lease or that a Debtor has any liability thereunder.

## 2. Approval of Assumptions and Assignments

The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions and assignments described in this Section V.A and Section V.D, pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date. An order of the Bankruptcy Court entered on or prior to the Confirmation Date, which may be included as part of the Confirmation Order, will specify the procedures for providing to each party whose Executory Contract or Unexpired Lease is being assumed or assumed and assigned pursuant to the Plan notice of: (a) the contract or lease being assumed or assumed and assigned; (b) the Cure Amount Claim, if any, that the applicable Debtor believes it would be obligated to pay in connection with such assumption; and (c) the procedures for such party to object to the assumption or assumption and assignment of the applicable contract or lease, or the amount of the proposed Cure Amount Claim. If an objection to a proposed assumption or assumption and assignment is not resolved in favor of the Debtors, the applicable Executory Contract or Unexpired Lease may be designated by the Debtors for rejection ~~(with the written consent of the Acquiring Company, which consent shall not unreasonably be withheld)~~, which shall be deemed effective as of the Effective Date.

## B. Payments Related to the Assumption of Executory Contracts and Unexpired Leases

To the extent that such Claims constitute monetary defaults, the Cure Amount Claims associated with each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan will be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor assuming such contract or lease or the assignee of such Debtor, if any, (1) by payment of the Cure Amount Claim in cash on the Effective Date or (2) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease. Pursuant to Section 365(b)(2)(D) of the Bankruptcy Code, no Cure Amount Claim shall be allowed for a penalty rate or other form of default rate of interest. If there is a dispute regarding (a) the amount of any Cure Amount Claim, (b) the ability of the applicable Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to assumption or assumption and assignment of such contract or lease, the payment of any Cure Amount Claim required by Section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption.

## C. Executory Contracts and Unexpired Leases to Be Rejected

On the Effective Date, except for an Executory Contract or Unexpired Lease that was previously assumed, assumed and assigned or rejected by an order of the Bankruptcy Court or that is assumed pursuant to Section V.A (including any related agreements assumed pursuant to Section V.A.2), each Executory Contract and Unexpired Lease entered into by a Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be rejected pursuant to Section 365 of the Bankruptcy Code. The Executory Contracts and Unexpired Leases to be rejected will include the Executory Contracts and Unexpired Leases listed on Exhibit P-4. Each contract and lease listed on Exhibit P-4 will be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. Listing a contract or lease on Exhibit P-4 will not constitute an admission by a Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that a Debtor has any liability thereunder. Any Executory Contract and Unexpired Lease not listed on Exhibit P-3 or P-4 and not previously assumed, assumed and assigned or rejected by an order of the Bankruptcy Court will be deemed rejected irrespective of whether such contract is listed on Exhibit P-4. The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections, pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date.

**D.     Contracts and Leases Entered Into or Assumed After the Petition Date**

Contracts and leases entered into after the Petition Date by a Debtor, and any Executory Contracts and Unexpired Leases assumed by a Debtor, will be performed by such Debtor in the ordinary course of its business, ~~and will be assigned to the Acquiring Company upon Confirmation or as soon as practical thereafter~~.

**E.     Rejection Damages**

Except as otherwise required under Section 503(b)(7) of the Bankruptcy Code, any Claims arising from the rejection of any Executory Contract or Unexpired Lease will be treated as a member of Class 6.

**F.     Bar Date for Rejection Damages**

Except as heretofore barred by court order, if the rejection of an Executory Contract or Unexpired Lease gives rise to a Claim (including any Claims arising from those indemnification obligations described in Section V.G) by the other party or parties to such contract or lease, such Claim will be forever barred and will not be enforceable against the Debtors, ~~the Acquiring Company,~~ their respective successors or their respective properties unless a proof of Claim is Filed and served on the Debtors, pursuant to the procedures specified in the Confirmation Order and the notice of the entry of the Confirmation Order or another order of the Bankruptcy Court, as applicable, no later than 30 days after the Effective Date. Upon the rejection of an Executory Contract or Unexpired Lease, notice of the applicable bar date for Filing rejection damages Claims will be served on the non-Debtor party or parties to such agreement, which may be part of the Confirmation Notice or may be given by serving the Bankruptcy Court's Order establishing such Bar Date.

**G.     Obligations to Indemnify Directors, Officers and Employees**

The obligations of each Debtor to indemnify any person who, as of the Order for Relief Date, was no longer serving as a director, officer or employee of such Debtor, which indemnity obligation arose by reason of such person's prior service in any such capacity or as a director, officer or employee of another corporation, partnership or other legal entity, whether provided in the applicable certificates of incorporation, bylaws or similar constituent documents, by statutory law or by written agreement, policies or procedures of or with such Debtor, will be terminated and be discharged pursuant to Section 502(e) of the Bankruptcy Code or otherwise, as of the Effective Date; *provided, however,* that to the extent that such indemnification obligations no longer give rise to contingent Claims that can be disallowed pursuant to Section 502(e) of the Bankruptcy Code, such indemnification obligations will be deemed and treated as Executory Contracts that are rejected by the applicable Debtor pursuant to the Plan and Section 365 of the Bankruptcy Code, as of the Effective Date, and any Claims arising from such indemnification obligations (including any rejection damage claims) will be subject to the bar date provisions of Section V.F and, if timely filed, will be treated as a member of Class 6.

### ARTICLE VI.
### PROVISIONS GOVERNING DISTRIBUTIONS

**A.     Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided in this Article VI, distributions of cash to be made on the Effective Date to holders of Claims that are Allowed as of the Effective Date will be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than: (a) 60 days after the Effective Date; or (b) such later date when the applicable conditions of Section V.B (regarding cure payments for Executory Contracts and Unexpired Leases being assumed), Section VI.E.2 (regarding undeliverable distributions) or Section IV.C (regarding surrender of canceled instruments and securities) are satisfied. Distributions on account of Claims that become Allowed Claims after the Effective Date will be made pursuant to Sections VI.G and VII.C.

**B.      Method of Distributions to Holders of Claims**

The Debtors, the Acquiring Company or such Third Party Disbursing Agents as the Debtors or the Acquiring Company may employ in their reasonable discretion will make all distributions of cash required under the Plan. Any Disbursing Agent will serve without bond, and any Disbursing Agent may employ or contract with other entities to make or assist in making the distributions required by the Plan.

**C.      Means of Cash Payments**

Except as otherwise specified herein, cash payments made pursuant to the Plan to holders of Claims will be in U.S. currency by checks drawn on a domestic bank selected by the applicable Disbursing Agent or, at the option of the applicable Disbursing Agent, by wire transfer from a domestic bank.

**D.      Timing and Calculation of Amounts to Be Distributed**

**1.      Allowed Claims**

Each holder of an Allowed Claim will receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class pursuant to the terms and conditions of the Plan.

**2.      Rounding**

No Disbursing Agent will be required to make distributions or payments of fractions of dollars to members of Class 5 or Class 6. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for under the principles of Pro Rata distribution, it shall be within the Disbursing Agent's sole discretion to make an actual payment that reflects a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

**3.      De Minimis Distributions**

No Disbursing Agent will be required to distribute cash to the holder of an Allowed Claim in an impaired Class if the aggregate amount of cash to be distributed on account of such Claim is less than $5.00. Any holder of an Allowed Claim on account of which the aggregate amount of cash to be distributed is less than $5.00 will have its claim for such distribution discharged and will be forever barred from asserting any such claim against the Debtors or their respective property.

## E.  Delivery of Distributions and Undeliverable or Unclaimed Distributions

### 1.  Delivery of Distributions

Except as provided in Section VI.E.2, distributions to members of Class 5 and Class 6 will be made by a Disbursing Agent: (a) at the addresses set forth on the respective proofs of Claim Filed by holders of such Claims; (b) at the addresses set forth in any written certification of address change delivered to the Disbursing Agent (including pursuant to a letter of transmittal delivered to a Disbursing Agent) after the date of Filing of any related Proof of Claim; or (c) at the addresses reflected in the applicable Debtor's Schedules if no proof of Claim has been Filed and the Disbursing Agent has not received a written notice of a change of address.

### 2.  Undeliverable Distributions

If any distribution to a member of Class 5 or Class 6 is returned to a Disbursing Agent as undeliverable, the Disbursing Agent shall have no obligation to notify or attempt to notify such member of the undeliverable status of said distribution. Subject to Section VI.E.3, the Disbursing Agent shall retain possession of undeliverable distributions until thirty (30) days after a distribution becomes deliverable by receipt of written notification of the applicable member's then-current address. Undeliverable distributions that subsequently become deliverable pursuant to this Section VI.E.2 shall be made to the applicable holder without interest.

### 3.  Unclaimed Distributions

All distributions made pursuant to this Plan in the form of cash payments, as set forth in Section VI.C, shall be available to the applicable holder for a period of six (6) months from the date that the Debtors, ~~the Acquiring Company~~ or any third-party Disbursing Agent makes the distribution, notwithstanding the undeliverable status of any distribution. Following expiration of the applicable six-month period, the amounts in respect of any remaining unclaimed distributions allocated for such class will revert to ~~the Acquiring Companies~~Debtors and be subject to the post-confirmation security interests of GEFF and Fifth Third. Upon such reversion, the Claim of any Claim holder or its successor with respect to such Claim shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

## F.  Compliance with Tax Requirements

### 1.  Withholding by Disbursing Agent

In connection with the Plan, to the extent applicable, each Disbursing Agent will comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan will be subject to applicable withholding and reporting requirements. Each Disbursing Agent will be authorized to take any actions that may be necessary or appropriate to comply with those withholding and reporting requirements, including requiring recipients to fund the payment of such withholding as a condition to delivery of distributions pursuant to the Plan.

### 2.  Payment of Taxes Upon Receipt of Distribution

Notwithstanding any other provision of the Plan, each entity receiving a distribution of cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any Tax

obligations imposed on it by any governmental unit on account of the distribution, including income, withholding and other Tax obligations.

**G.      Setoffs**

Except with respect to claims of a Debtor released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Debtors or a Third Party Disbursing Agent may, pursuant to Section 553 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of the Claim) the claims, rights and causes of action of any nature that the applicable Debtor may hold against the holder of such Allowed Claim; *provided, however,* that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the applicable Debtor of any claims, rights and causes of action that the Debtor may possess against the Claim holder.

# ARTICLE VII.
# PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**A.      Prosecution of Objections to Claims**

**1.      Objections to Claims**

All objections to Claims must be Filed and served on the holders of such Claims on or before the Effective Date, and, if Filed prior to the Effective Date, such objections will be served on the parties on the then-applicable service list in the Chapter 11 Cases. If an objection has not been Filed to a proof of Claim or a scheduled Claim by the Effective Date, the Claim to which the proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier and is not otherwise a Disputed Claim.

**2.      Authority to Prosecute Objections**

**a.**      After the Effective Date, only the Debtors ~~and the Acquiring Company~~ will have the authority to File, settle, compromise, withdraw or litigate to judgment objections to Claims, including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court. After the Effective Date, the Debtors~~, with the consent of the Acquiring Company~~ may settle or compromise any Disputed Claims without approval of the Bankruptcy Court.

**B.      Treatment of Disputed Claims**

Notwithstanding any other provisions of the Plan, no payments or distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.

**C.      Distributions on Account of Disputed Claims Once Allowed**

No later than each calendar quarter, the applicable Disbursing Agent will make all distributions on account of any Disputed Claim that has become an Allowed Claim during the preceding calendar quarter. Such distributions will be made pursuant to the provisions of the Plan governing the applicable Class.  Under

no circumstances will holders of such Claims be entitled to receive interest on account of their Allowed Claim.

# ARTICLE VIII.
## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

Pursuant to the Confirmation Order, the Bankruptcy Court shall approve the substantive consolidation of the Debtors ~~for the purpose of implementing the Plan, including~~ solely for purposes of voting, Confirmation and distributions to be made under the Plan. Pursuant to such order ~~(1) all assets of the Debtors will be deemed merged; (2) all liabilities of the Debtors will be deemed merged; (3) all guarantees by one Debtor of the obligations of any other Debtor will be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors will be deemed to be one obligation of the consolidated Debtors; and (4)~~ each and every Claim Filed or deemed Filed by or on behalf of a single creditor in a single Class of Claims against any of the Debtors, will be deemed a single Claim Filed against the Debtors. Such substantive consolidation (other than for the purpose of implementing the Plan) will not affect the legal and corporate structures of the Debtors, subject to the right of the Debtors to effect the transactions contemplated by the Plan.

# ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

**A.      Conditions to Confirmation**

The Bankruptcy Court will not enter the Confirmation Order unless and until the following conditions have been satisfied or duly waived pursuant to Section IX.C:

**a.**      The Confirmation Order is reasonably acceptable in form and substance to the Debtors, GEFF and Fifth Third.

**b.**      All Exhibits to the Plan are in form and substance reasonably satisfactory to the Debtors, GEFF and Fifth Third.

**B.      Conditions to the Effective Date**

The Effective Date will not occur, and the Plan will not be consummated, unless and until each of the following conditions has been satisfied or duly waived pursuant to Section IX.C:

**a.**      The Confirmation Order has been entered; has not been reversed, stayed, modified or amended; and has become a Final Order;

**b.**      The Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) approving and authorizing the Debtors to take all actions necessary or appropriate to implement the Plan in form and substance reasonably acceptable to the Debtors, which order shall include provisions for the implementation and completion of the restructuring transactions and the other transactions contemplated by the Plan and the

implementation and consummation of the contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan;

**c.** The Bankruptcy Court shall have entered one or more orders (which may include the Confirmation Order) authorizing the assumption or rejection of Unexpired Leases and Executory Contracts by the Debtors as contemplated by Article V hereof;

**d.** All documents effectuating the transactions contemplated by the GEFF LOI and Fifth Third Term Sheet shall have been executed and delivered by all parties thereto, and all conditions precedent to the effectiveness of each such document shall have been satisfied or waived in accordance with the terms thereof; and

**e.** All other actions, documents, consents and agreements necessary to implement the Plan shall have been effected, obtained and/or executed.

**C.    Waiver of Conditions to the Confirmation or Effective Date**

The conditions to Confirmation set forth in Section IX.A and the conditions to the Effective Date set forth in Section IX.B may be waived in whole or part by the Debtors without an order of the Bankruptcy Court upon prior written notice to and consent from GEFF and Fifth Third.

**D.    Effect of Nonoccurrence of Conditions to the Effective Date**

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section IX.C, then upon motion by the Debtors made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order will be vacated by the Bankruptcy Court; *provided, however,* that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to this Section IX.D: (1) the Plan will be null and void in all respects, including with respect to (a) the assumptions of Executory Contracts and Unexpired Leases pursuant to Section V.A.1 and (b) the releases described in Section IV.B.2; and (2) nothing contained in the Plan will (a) constitute a waiver or release of any claims by or against, or any Interest in, any Debtor, (b) prejudice in any manner the rights of the Debtors, GEFF, Fifth Third, or any other party in interest or (c) constitute an admission, acknowledgment, offer or undertaking by any of the Debtors or any other party in interest in any respect.


**ARTICLE X.**
**CRAMDOWN**

The Debtors request Confirmation under Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not accept or is deemed not to accept the Plan pursuant to Section 1126 of the Bankruptcy Code. The Debtors reserve the right to modify the Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE XI.
## RELEASE AND INJUNCTION

**A. Release of Assets**

Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over each of the Debtors and their assets. Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matter set forth in Article XII of the Plan; the Debtors shall distribute the Distributable Cash ~~and wind up the affairs of the Debtors~~, with any amount remaining after satisfaction of payments required to be made pursuant to the Plan continuing to be ~~remitted to the Acquiring Company and~~ subject to the post-confirmation security interests in GEFF and Fifth Third.

**B. Term of Injunctions or Stays**

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence at the Confirmation Date prior to the entry of the Confirmation Order, shall remain in full force and effect until the closing of the Chapter 11 Cases.

**C. Injunctions**

*1. Except as provided in, or for the purpose of enforcing, the Plan, its exhibits, the executed Documents or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold (i) a Claim or other debt or liability against the Debtors that would be discharged upon Confirmation but for the provision of Section 1141(d)(3) of the Bankruptcy Code, or (ii) an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan will be permanently enjoined from taking any of the following actions on account of any such Claims, debts or liabilities or terminated Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Debtors ~~, the Acquiring Company~~ or their respective property, other than to enforce any right pursuant to the Plan to a distribution; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors ~~, the Acquiring Company~~ or their respective property, other than as permitted pursuant to clause (a) above; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtors ~~, the Acquiring Company~~ or their respective property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors ~~, or the Acquiring Company~~; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.*

*2. As of the Effective Date, all entities that have held, currently hold or may hold any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that are released pursuant to the Plan will be permanently enjoined from taking any of the following actions against any released entity or its property on account of such released claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released entity; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.*

**3.** ***By accepting distributions pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this***
***Section XI.C.1.***

**D.      Subordination Rights**

The classification and manner of satisfying Claims and Interests under the Plan does not take into consideration subordination rights and nothing in the Plan or Confirmation Order shall affect any subordination rights that a holder of a Claim may have with respect to any distribution to be made pursuant to the Plan, whether existing under general principles of equitable subordination, contract, Section 510(c) of the Bankruptcy Code or otherwise.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including, but not limited to, the following matters:

   **a.**      to hear and determine pending motions for (i) the assumption or rejection or (ii) the assumption and assignment of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure required to be paid;

   **b.**      to adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or the Plan, proceedings to adjudicate the allowance of Disputed Claims and Interests, and all controversies and issues arising from or relating to any of the foregoing;

   **c.**      to ensure that distributions to holders of Allowed Claims and Interests are accomplished as provided in the Plan;

   **d.**      to allow, disallow, determine, liquidate, classify, reclassify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance, priority or classification of Claims or Interests;

   **e.**      to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

   **f.**      to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

**g.** to modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order or any contract, instrument release or other agreements or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

**h.** to hear and determine all applications for compensation and reimbursement of Professional Claims under the Plan or under Sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

**i.** to determine requests for the payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

**j.** to hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

**k.** to issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

**l.** to enter a final decree closing the Chapter 11 Cases;

**m.** to enforce all orders previously entered by the Bankruptcy Court; and

**n.** unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims, Interests and Retained Actions. Notwithstanding the foregoing, the Debtors and any party may agree in writing that the jurisdiction of the Bankruptcy Court shall not be exclusive, but concurrent with other courts of competent jurisdiction.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

### A. Limitation of Liability

The Debtors, ~~the Acquiring Company,~~ GEFF, Fifth Third and their respective directors, officers, employees, predecessors, successors, members, attorneys, accountants, underwriters, investment bankers, financial advisors, appraisers, representatives and agents, acting in such capacity, will neither have nor incur, and are hereby forever released and discharged from, any claims, obligations, suits, judgments, damages, demands, rights, causes of action or liabilities asserted or held by any entity, including, but not limited to, one another or any holder of a Claim or Interest, or any of their respective agents, employees, representatives,

financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act taken or omitted to be taken in connection with, arising out of or related to their participation in the Debtors' Chapter 11 Cases and in the formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan; *provided, however*, that the foregoing provisions of this Section XIII.A will have no effect on: (1) the liability of any person or entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; (2) the liability of any person or entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct; or (3) the liability of any person or entity resulting from any act or omission occurring prior to the Petition Date. Notwithstanding any other provision of the Plan, no holder of a Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties identified in this Section XIII.A for any act or omission in connection with, relating to or arising out of  the Debtors' Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under this Plan, except for their gross negligence or willful misconduct.

**B.      Modification of the Plan**

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend or modify the Plan before the Effective Date, *provided,* that such alterations, amendments or modifications shall not be made without the prior written consent of GEFF and Fifth Third.

**C.      Revocation of the Plan**

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date, *provided*, that such revocation or withdrawal shall not be made without the prior written consent of GEFF and Fifth Third. If the Debtors revoke or withdraw the Plan, or if Confirmation does not occur, then the Plan will be null and void in all respects, and nothing contained in the Plan will: (1) constitute a waiver or release of any claims by or against, or any Interests in, any Debtor; (2) prejudice in any manner the rights of any Debtor or any other party in interest; or (3) constitute an admission of any sort by any Debtor or any other party in interest.

**D.      Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted; *provided* that any such alteration or interpretation must be in form and substance acceptable to the Debtors, GEFF and Fifth Third. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## E. Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

## F. Service of Documents

Any pleading, notice or other document required by the Plan or the Confirmation Order to be served on or delivered to the Debtors, GEFF, Fifth Third and the United States Trustee must be sent by overnight delivery service, facsimile transmission, courier service or messenger.

IN WITNESS WHEREOF, the Debtors have submitted this Modified Plan of Reorganization this ~~27th~~ 21st day of ~~October~~December, 2009.

TUMBLEWEED, INC. &
CUSTOM FOOD SOLUTIONS, LLC
DEBTORS AND DEBTORS IN POSSESSION


By: /s/ Matthew Higgins
        Matthew Higgins
        President and Chief Executive Officer
        Tumbleweed, Inc.

/s/ David M. Cantor
DAVID M. CANTOR
TYLER R. YEAGER
SEILLER WATERMAN LLC
22nd Floor-Meidinger Tower
462 S. Fourth Street
Louisville, Kentucky 40202
Telephone: (502) 584-7400
Facsimile: (502) 583-2100
E-mail: cantor@derbycitylaw.com
E-mail: yeager@derbycitylaw.com
ATTORNEYS FOR TUMBLEWEED, INC. & CUSTOM FOOD SOLUTIONS, LLC

C:\DOCUME~1\TRY\LOCALS~1\Temp\WP}00001.TMP